No. 19-2953

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| RUFUS L. BROOKS, | ) | Appeal from the United States District |
| | ) | Court for the Northern District of |
| *Plaintiff-Appellant,* | ) | Illinois, Eastern Division. |
| | ) | |
| v. | ) | No. 1:18-cv-03472 |
| | ) | |
| SAC WIRELESS, LLC, | ) | Hon. Edmond E. Chang, |
| | ) | District Judge |
| *Defendant-Appellee.* | ) | |

## BRIEF AND REQUIRED SHORT APPENDIX OF COURT-APPOINTED
## *AMICUS CURIAE* IN SUPPORT OF PLAINTIFF-APPELLANT

Michael T. Brody
*Counsel of Record*
Leigh J. Jahnig
Jenner & Block LLP
353 N. Clark Street
Chicago, IL  60654-3456
(312) 222-9350
mbrody@jenner.com

Jessica Ring Amunson
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
(202) 639-6023

*Court-Appointed Amicus Curiae*

Dated: August 5, 2020

## ORAL ARGUMENT REQUESTED

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: __19-2953__

Short Caption: ___Rufus Brooks v. SAC Wireless, LLC___

      To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

      The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    **[x]**          **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

      ___Court appointed amicus curiae Michael T. Brody___

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

(3)  If the party or amicus is a corporation:

    i)        Identify all its parent corporations, if any; and

        ___N/A___

    ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

        ___N/A___

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
    ___N/A___

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
    ___N/A___

---

Attorney's Signature: _____/s/ Michael T. Brody_____   Date: ___August 5, 2020 (new)__

Attorney's Printed Name: ___Michael T. Brody_____

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes  X**      **No ____**

Address: _353 North Clark Street, Chicago, IL  60654-3456_____

Phone Number: ___(312) 923-2711_____    Fax Number: _____(312) 527-0484_____

E-Mail Address: ___mbrody@jenner.com_____

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No:  19-2953

Short Caption:   Rufus Brooks v. SAC Wireless, LLC

     To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

     The Court prefers that the disclosure statement be filed immediately following docketing but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

     **[x]**          **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

     Court appointed amicus curiae Michael T. Brody

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

(3)  If the party or amicus is a corporation:

     i)      Identify all its parent corporations, if any; and

          N/A

     ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

          N/A

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
     N/A

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
     N/A

Attorney's Signature:  /s/ Leigh J. Jahnig     Date:  August 5, 2020 (new)

Attorney's Printed Name:  Leigh J. Jahnig

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** _____  **No  X**

Address:  353 North Clark Street, Chicago, IL  60654-3456

Phone Number:  (312) 840-7243     Fax Number:  (312) 527-0484

E-Mail Address:  ljahnig@jenner.com

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No:  19-2953

Short Caption:   Rufus Brooks v. SAC Wireless, LLC

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    **[x]**         **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    Court appointed amicus curiae Michael T. Brody

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

(3)  If the party or amicus is a corporation:

    i)      Identify all its parent corporations, if any; and

        N/A

    ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

        N/A

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
    N/A

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
    N/A

Attorney's Signature:      /s/ Jessica Ring Amunson            Date:   August 5, 2020 (new)

Attorney's Printed Name:   Jessica Ring Amunson

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** _____     **No  X**

Address:  1099 New York Avenue, NW, Suite 900, Washington, DC 20001-4412

Phone Number:   (202) 639-6023          Fax Number:    (202) 661-4993

E-Mail Address:   jamunson@jenner.com

# TABLE OF CONTENTS

CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS ................................................. i

TABLE OF AUTHORITIES ................................................................ vi

INTRODUCTION ................................................................................1

JURISDICTIONAL STATEMENT ...................................................................2

ISSUES PRESENTED FOR REVIEW ................................................................3

STATEMENT OF THE CASE.........................................................................4

    A.  Mr. Brooks Files An Employment Discrimination Lawsuit Against SAC Wireless, Inc. ...................................................................................4

    B.  The Parties Depose Several Witnesses Over Two Days In February 2019. ......................4

    C.  SAC Wireless Moves For Sanctions Against Mr. Brooks...................................6

    D.  The District Court Dismisses The Case With Prejudice As An Inherent Power Sanction.............................................................................8

    E.  Mr. Brooks Emails His Notice Of Appeal. .....................................................10

STANDARD OF REVIEW ...........................................................................10

SUMMARY OF ARGUMENT .........................................................................11

ARGUMENT ........................................................................................12

I.  This Court Has Jurisdiction Over Mr. Brooks's Appeal Because His Notice Of Appeal Was Timely Filed.........................................................................12

    A.  Mr. Brooks's Timely Email Was Sufficient To File His Notice Of Appeal.....................12

    B.  A Local Standing Order Prohibiting Email Filing To Court Staff Does Not Deprive This Court Of Jurisdiction...................................................................14

    C.  This Court Should Not Dismiss Mr. Brooks's Appeal For Failing To Comply With A Claim-Processing Rule Contained In The Local Standing Order Prohibiting Email Filing To Court Staff. .........................................................17

II.  The District Court Abused Its Discretion By Dismissing Mr. Brooks's Case On The Basis Of A Single Alleged Statement And Clearly Erred By Finding That Mr. Brooks Threatened A Witness....................................................................20

A.  A Single Instance Of An Alleged Threat Is Not Sufficiently Egregious To Warrant Dismissal As A Sanction. ...................................................................21

B.  The District Court Did Not Adequately Consider Lesser Sanctions. ...............................24

C.  The District Court Abused Its Discretion In Dismissing The Case Because Key Evidence Was Absent From The Hearing. ........................................................26

D.  The District Court Clearly Erred In Finding That Mr. Brooks Threatened A Witness.............................................................................................................27

CONCLUSION..............................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. Hardman*,
   241 F.3d 544 (7th Cir. 2001) ..................................................................... 14, 18-19

*Bank of Louisiana v. SunGard Availability Services, L.P.*,
   374 F. App'x 539 (5th Cir. 2010) ..................................................................... 16-17

*Barnhill v. United States*,
   11 F.3d 1360 (7th Cir. 1993) ..................................................................... 11, 20, 27

*Birdo v. Urbanosky*,
   619 F. App'x 536 (7th Cir. 2015) ..................................................................... 27

*Boomer v. AT&T Corp.*,
   309 F.3d 404 (7th Cir. 2002) ..................................................................... 19

*Brengettcy v. Horton*,
   423 F.3d 674 (7th Cir. 2005) ..................................................................... 16

*Briggs v. Rendlen (In re Reed)*,
   943 F.3d 849 (8th Cir. 2019) ..................................................................... 16

*Brown v. Lirios*,
   391 F. App'x 539 (7th Cir. 2010) ..................................................................... 16

*Clay v. United States*,
   537 U.S. 522 (2003) ..................................................................... 17

*Contino v. United States*,
   535 F.3d 124 (2d Cir. 2008) ..................................................................... 15

*Dotson v. Bravo*,
   321 F.3d 663 (7th Cir. 2003) ..................................................................... 21

*Durst v. Durst*,
   663 F. App'x 231 (3d Cir. 2016) ..................................................................... 16

*Egersheim v. Gaud*,
   No. Civ. 07-5116, 2011 WL 13238544 (D.N.J. Nov. 30, 2011) ........................... 23

*Emerson v. Dart*,
   900 F.3d 469 (7th Cir. 2018), *reh'g denied* (Sept. 25, 2018) ........................... 24, 25

*Fuery v. City of Chicago*,
  900 F.3d 450 (7th Cir. 2018) ........................................................21, 22

*Greviskes v. Universities Research Association*,
  417 F.3d 752 (7th Cir. 2005) ...............................................................21

*Greyer v. Illinois Department of Corrections*,
  933 F.3d 871 (7th Cir. 2019) ..........................................................19, 23

*Halfen v. United States*,
  324 F.2d 52 (10th Cir. 1963) ...............................................................13

*Hamer v. Neighborhood Housing Services of Chicago*,
  138 S. Ct. 13 (2017)............................................................10, 11, 12, 16

*Han Tak Lee v. Houtzdale SCI*,
  798 F.3d 159 (3d Cir. 2015)..................................................................18

*Hutter Northern Trust v. Door County Chamber of Commerce*,
  467 F.2d 1075 (7th Cir. 1972) ..............................................................14

*Jimenez v. Madison Area Technical College*,
  321 F.3d 652 (7th Cir. 2003) ..........................................................21, 22

*Klemm v. Astrue*,
  543 F.3d 1139 (9th Cir. 2008) ........................................................15, 16

*Kovilic Construction Co. v. Missbrenner*,
  106 F.3d 768 (7th Cir. 1997) ...............................................................20

*Ladien v. Astrachan*,
  128 F.3d 1051 (7th Cir. 1997) .................................................21, 22, 23, 24

*Long v. Steepro*,
  213 F.3d 983 (7th Cir. 2000) ......................................................20, 24, 26

*Mayle v. Illinois*,
  956 F.3d 966 (7th Cir. 2020) ...............................................................18

*McArthur v. Source Gas, LLC*,
  No. 10-cv-02327, 2011 WL 7063333 (D. Colo. Dec. 20, 2011), *report and
  recommendation adopted*, 2012 WL 161597 (D. Colo. Jan. 18, 2012)..................................28

*Meece v. Ray's, LLC*,
  No. 1:15-cv-00144, 2015 WL 13741207 (S.D. Ind. Nov. 23, 2015), *report and
  recommendation adopted*, 2016 WL 760950 (S.D. Ind. Feb. 19, 2016) ................................25

*Michael v. Boutwell*,
    138 F. Supp. 3d 761 (N.D. Miss. 2015) ..............................................................28

*Montaño v. City of Chicago*,
    535 F.3d 558 (7th Cir. 2008) ..............................................................................24

*Ndulue v. The Fremont-Rideout Health Group*,
    No. 2:14-cv-00735, 2017 WL 1354560 (E.D. Cal. Apr. 13, 2017) ......................25

*Nelson v. Schultz*,
    878 F.3d 236 (7th Cir. 2017) ..............................................................................23

*Philos Technologies, Inc. v. Philos & D, Inc.*,
    802 F.3d 905 (7th Cir. 2015) .........................................................................20, 27

*Rivera v. Drake*,
    767 F.3d 685 (7th Cir. 2014) .........................................................................20, 24

*Schilling v. Walworth County Park & Planning Commission*,
    805 F.2d 272 (7th Cir. 1986) ..............................................................................25

*In re Strickland & Davis International, Inc.*,
    612 F. App'x 971 (11th Cir. 2015) ......................................................................16

*Sunegova v. Village of Rye Brook*,
    No. 09-CV-4956, 2011 WL 6640424 (S.D.N.Y. Dec. 22, 2011) ..........................25

*United States v. Harvey*,
    516 F.3d 553 (7th Cir. 2008) .........................................................................15, 16

*Vince v. Rock County, Wisconsin*,
    604 F.3d 391 (7th Cir. 2010) .........................................................................12, 15

*Waivio v. Board of Trustees of University of Illinois at Chicago*,
    290 F. App'x 935 (7th Cir. 2008) ........................................................................21

**STATUTES AND RULES**

28 U.S.C. § 753(b) ....................................................................................................17

28 U.S.C § 1291 ..........................................................................................................3

28 U.S.C. § 1331 ..........................................................................................................2

28 U.S.C. § 2107 ..................................................................................................12, 17

29 U.S.C. § 626 ............................................................................................................2

42 U.S.C. § 2000e-2 .....................................................................................................2

42 U.S.C. § 2000e-5(f)(1) ................................................................................2

Fed. R. App. P. 3 ...........................................................................................18

Fed. R. App. P. 3(c) ..................................................................................3, 12

Fed. R. App. P. 3(c)(4) ..................................................................................12

Fed. R. App. P. 29 ...........................................................................................1

Fed. R. Civ. P. 5(d)(2)(B) .........................................................................13, 14

Fed. R. Civ. P. 5(d)(3)(C) ..............................................................................14

Fed. R. Civ. P. 5(d)(4) ....................................................................................15

Fed. R. Civ. P. 83(a)(2) ..................................................................................18

**OTHER AUTHORITIES**

Craig St. John & Tamara Heald-Moore, *Fear of Black Strangers*, 24 Soc. Sci.
     Rsch. 262 (1995) ......................................................................................29

N.D. Ill. Fourth Amended Gen. Ord. 20-0012 (May 26, 2020)....................17

N.D. Ill. General Order on Electronic Case Filing 16-0020 .........................14

*People See Black Men as Larger, More Threatening Than Same-Sized White Men*,
     Am. Psych. Ass'n (March 13, 2017),
     https://www.apa.org/news/press/releases/2017/03/black-men-threatening ......................22, 29

# INTRODUCTION[1]

This case presents two legal issues: (1) whether this Court has jurisdiction to hear this appeal filed by a *pro se* litigant via email, consistent with the district court's instructions, and (2) whether the district court abused its discretion by dismissing the *pro se* litigant's case as a sanction for allegedly threatening a witness during a deposition.

Rufus L. Brooks brought this discrimination case against SAC Wireless, Inc. *pro se*, and proceeded through discovery, encountering difficulties as a result of his lack of legal training. Mr. Brooks's frustration and confusion periodically manifested itself, including during depositions taken over the course of two days in February 2019. At the very first of those depositions, Mr. Brooks allegedly "threatened" the witness. The parties then continued with the second deposition scheduled for that same day, and returned for more depositions on the following day. On that second day, other employees at defense counsel's law firm believed Mr. Brooks was being loud and disruptive and they directed that Mr. Brooks be excluded from the premises and cancelled the remaining deposition.

SAC Wireless then moved for sanctions and asked that the case be dismissed. The district court granted the motion and dismissed the case with prejudice, based not on any pattern of disruptive behavior by Mr. Brooks, but rather based solely on the alleged threat. The district court's dismissal was an abuse of discretion. A single instance of sanctionable conduct does not

---

[1] *Amicus Curiae* Michael T. Brody of Jenner & Block LLP submits this brief in support of Plaintiff-Appellant and of reversal of the judgment of the district court, in accordance with this Court's order of April 23, 2020. *See* App. Dkt. 10. On July 17, 2020, this Court ordered that the briefing requirements of Federal Rules of Appellate Procedure 28 and 32 and Circuit Rules 28 and 32, and the word limit in Circuit Rule 32, should apply to this brief. App. Dkt. 24. No party or party's counsel authored this brief in whole or in part. No party, party's counsel, or any other person contributed money that was intended to fund preparing or submitting this brief. *See* Fed. R. App. P. 29. Plaintiff-Appellant Rufus L. Brooks has reviewed this brief and indicated to *Amicus Curiae* that he accepts this brief as his own, rather than submit his own filing.

support dismissal with prejudice, particularly under the circumstances here: (1) the district court did not adequately consider lesser sanctions, (2) the district court did not have the benefit of key testimony on which to base its factual conclusions, and (3) the single instance of conduct was not actually threatening.  Indeed, this single alleged "threat" was not even perceived as a threat at the time, as evidenced by the fact that SAC Wireless continued to proceed with multiple depositions even after the alleged "threat" occurred.

Following this dismissal, Mr. Brooks emailed his notice of appeal to the district judge's chambers address within the thirty-day deadline to file a notice of appeal.  This email successfully "filed" the notice of appeal because it followed the procedures that the district court had specifically instructed Mr. Brooks to follow more than six months earlier, notwithstanding a local standing order stating that such emails are not "filings."  Such local rules are not jurisdictional, and thus cannot serve as a bar to this Court's appellate jurisdiction.  Consequently, Mr. Brooks timely filed his notice of appeal and this Court has jurisdiction over this appeal.

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant Rufus L. Brooks filed his complaint in the United States District Court for the Northern District of Illinois on May 15, 2018.  Dkt. 1.[2]  Mr. Brooks alleged that Defendant-Appellee SAC Wireless, LLC, an Illinois corporation,[3] violated Title VII of the Civil Rights Act of 1964, and the Age Discrimination in Employment Act of 1967.  *Id.*  The district court had federal question jurisdiction under 28 U.S.C. § 1331, because Mr. Brooks's claims arose under 42 U.S.C. § 2000e-2, 42 U.S.C. § 2000e-5(f)(1), and 29 U.S.C. § 626.

---

[2] Citations to "Dkt. __" are to the district court docket below, 1:18-cv-03472.  Citations to "App. Dkt. __" are to the docket in this captioned appeal.  Citations to "A __" are to the required short appendix bound with this brief.

[3] The record indicates that SAC Wireless is an Illinois corporation, but the record lacks information about SAC Wireless's principal place of business.  *See* Dkt. 7 ¶ 11.

The district court dismissed Mr. Brooks's complaint with prejudice as a discovery sanction on August 23, 2019. Dkt. 67, A1-13. The district court entered its final judgment, dismissing the case with prejudice, that same day. Dkt. 68, A14.

On September 23, 2019, Mr. Brooks filed a notice of appeal by emailing the notice of appeal to the district court via the district judge's chambers and to opposing counsel. Dkt. 69; *see* App. Dkt. 5 at 6. Mr. Brooks also mailed the notice of appeal to the district court clerk. App. Dkt. 5. Mr. Brooks's notice of appeal complied with the requirements of Federal Rule of Appellate Procedure 3(c). As discussed below, Mr. Brooks's email to the district court effectuated the filing of his notice of appeal, and is therefore sufficient to invoke the appellate jurisdiction of this Court. This Court therefore has jurisdiction over this appeal pursuant to 28 U.S.C § 1291, as this is an appeal of a final judgment of the district court.

## ISSUES PRESENTED FOR REVIEW

1.     Whether Mr. Brooks timely filed his notice of appeal when, on the thirtieth day after the district court's final judgment, he emailed his notice of appeal to the district judge's chambers email address and mailed a copy to the district clerk, in accordance with the district judge's instructions earlier in the case about how Mr. Brooks should handle filings with the court.

2.     Whether the district court abused its discretion in dismissing Mr. Brooks's suit as a discovery sanction based on a single instance of allegedly sanctionable conduct where Mr. Brooks engaged in no other sanctionable conduct, the district court did not adequately consider whether lesser sanctions would suffice, the sanctions hearing did not include key evidence, and no witnesses to the allegedly sanctionable conduct even responded to it as a "threat."

**STATEMENT OF THE CASE**

**A.     Mr. Brooks Files An Employment Discrimination Lawsuit Against SAC Wireless, Inc.**

On May 15, 2018, Rufus Brooks, acting *pro se*, sued SAC Wireless LLC, alleging age and race discrimination in its failure to hire Mr. Brooks for various positions. *See* Dkt. 1. Mr. Brooks lives in Florida, *see id*. ¶ 10, and from the beginning of the case, participated in the court proceedings by telephone. *See* June 26, 2018 Tr. At the very first status hearing, Mr. Brooks alerted the district court that he was concerned that his inability to file electronically as a *pro se* litigant would result in delay due to his having to file by mail. June 26, 2018 Tr. at 5-6. The district court assured Mr. Brooks, "I am not particularly concerned about hitting the docket real fast." *Id*. at 6.

About six months into the litigation, however, it was apparent that mailing filings were "going to take a while to get [to the court]," so the district court ordered Mr. Brooks to simultaneously email his filings to the judge's chambers email address, with a copy to opposing counsel, to mitigate this delay and ensure timely receipt. Jan. 16, 2019 Tr. at 31-32; *see* Dkt. 30 ("To facilitate timely receipt by the Court, in addition to mailing the response with the Clerk of Court, Plaintiff shall email a .pdf [sic] copy of the response to chambers at Proposed_Order_Chang@ilnd.uscourts.gov (with a cc: to the defense counsel's email address).").

**B.     The Parties Depose Several Witnesses Over Two Days In February 2019.**

Pursuant to the discovery schedule agreed to by the parties, several witnesses were scheduled to be deposed at the offices of defense counsel on two consecutive days in February 2019. Dkt. 34. Mr. Brooks was scheduled to depose two SAC witnesses on the first day. *Id*. During those depositions, Mr. Brooks reportedly became "frustrated" because his "inexperience" in taking depositions led him to believe that "he wasn't getting the answer that he perceived he

4

should have gotten." Apr. 2, 2019 Evidentiary Hearing Tr. ("Hearing Tr.") at 17. Mr. Brooks was particularly frustrated by the answers of one witness, Joel Jeffrey "Jeff" Hamm, whom he had personally known for almost two decades. *Cf.* Hearing Tr. at 124. At the end of that witness's deposition, after Mr. Brooks announced he was "done with this deposition," counsel for SAC asked if he was threatening Mr. Hamm and Mr. Brooks stated that he was not. Dkt. 39-7 at 118. After going off the record, Mr. Brooks then reportedly stated, "I'll see you in Atlanta," which is where Mr. Hamm lives. Hearing Tr. at 133; *see id*. at 114-15. Again, defense counsel asked if this was a threat to Mr. Hamm, and again Mr. Brooks stated that was "not what [he] was saying." Hearing Tr. at 128. Defense counsel did not report this alleged "threat" to anyone at the time, nor seek any conference with the district judge regarding it. Instead, defense counsel proceeded with the deposition of the second SAC witness following this alleged "threat." *See* Dkt. 39-8 (noting start time of second deposition).

The next day, the parties returned for a second day of depositions. Mr. Brooks deposed another SAC witness, again becoming frustrated "as with most pro se people" because he did not "understand[] the process." Hearing Tr. at 61. Following Mr. Brooks's depositions of SAC's witness, counsel for SAC was scheduled to depose Mr. Brooks. Mr. Brooks became "agitated" when defense counsel suggested changing the start time for that deposition. *Id*. at 62.

The office managing partner of defense counsel's law firm, who was in the conference area for an unrelated meeting, observed Mr. Brooks "raising his voice and yelling." Hearing Tr. at 45. He informed Mr. Brooks that he needed to keep his voice down or he would be asked to leave. *Id*. at 45-46. Mr. Brooks reportedly responded with something to the effect of "you can't tell me what to do." *Id*. at 46-47. The firm's office administrator similarly believed that there was a

"confrontation" in the conference room used for Mr. Brooks's depositions, but acknowledged that the confrontation was "inaudible." *Id*. at 83, 85.

When Mr. Brooks left the office for the break between depositions, the office managing partner instructed defense counsel not to allow Mr. Brooks to return for Mr. Brooks's own deposition that afternoon. Hearing Tr. at 47-48. The office administrator met Mr. Brooks in the lobby of the office building when Mr. Brooks returned, and informed Mr. Brooks that "the deposition was cancelled and would be continued at a later date." Dkt. 39-6 ¶ 11.[4]

**C.     SAC Wireless Moves For Sanctions Against Mr. Brooks.**

Later that same day, SAC Wireless moved for sanctions and requested that the district court dismiss Mr. Brooks's suit. Dkt. 35. The court ordered briefing on the motion, and scheduled a "live–witness hearing." Dkt. 37. SAC Wireless then filed a supplemental brief in support of its original motion, accompanied by several affidavits. In those affidavits, SAC Wireless contended that Mr. Brooks had "verbally threatened" the witnesses and defense counsel. Dkt. 39. In his opposition, Mr. Brooks vigorously denied that he had threatened anyone. Dkt. 40.

On the date set for the hearing, Mr. Brooks did not appear in person, but called in by telephone as he had for every previous court appearance. Hearing Tr. at 2. Mr. Brooks explained that he did not understand that the court's instruction that the hearing be "live" meant that "you need to appear in court in person." *Id*. at 2-3. The court stated that it would allow SAC Wireless to present its witnesses that day as scheduled, and would continue the hearing to allow Mr. Brooks to travel to Chicago and testify. *Id*. at 3.

---

[4] The district court determined that the course of events after Mr. Brooks left the law office was not relevant, so testimony regarding this interaction between the office administrator and Mr. Brooks was not put forth at the subsequent hearing. *See* Hearing Tr. at 100-01.

Mr. Brooks sought to call defense counsel as an adverse witness, telling the court that he wanted to pursue the issue of why counsel had allowed him to return to the law firm for a second day of depositions when he had allegedly threatened a witness on the first day of depositions. Hearing Tr. at 146-48. The district court did not allow Mr. Brooks to do so, explaining that testimony from an advocate is disfavored, and that SAC Wireless's "subjective motive" for bringing the sanctions motion was irrelevant. *Id*. at 146, 148.

The district court continued the hearing to allow Mr. Brooks to appear in person and testify. *Id*. at 149, 153. Three days before the continued hearing date, Mr. Brooks moved to continue the hearing by emailing a motion to the courtroom deputy, and copying defense counsel, which the district court entered on the docket as with previous emailed filings. *See* docket text accompanying Dkt. 48. That same day, the district court denied Mr. Brooks's continuance motion. Dkt 49.

On the date scheduled for the continued hearing, April 22, Mr. Brooks again appeared by telephone, stating that "it didn't make sense for [him] to appear" if the court was not going to allow him to call the witnesses he had requested. April 22, 2019 Evidentiary Hearing Tr. ("April 22, 2019 Tr.") at 2-3. Mr. Brooks stated that he was also concerned that the court may not have received his motion for a continuance, stating "my motion for continuance was mailed on Thursday. It probably just reached the court today." *Id*. at 4. The court confirmed that it had ruled on the motion "as quickly as [it] could" because of the imminent hearing date, and had thus ruled as soon as the motion was "filed," meaning when Mr. Brooks "sent it into [sic] us." *Id*. at 5. Without allowing Mr. Brooks to testify telephonically, the court then "closed" the evidentiary hearing, and ordered post-hearing briefing. *Id*. The mailed version of Mr. Brooks's continuance motion was processed by the clerk's office later that same day, April 22, *see* Dkt. 51, and entered

onto the docket, though the court had already ruled on the motion three days earlier, on April 19, after entering the emailed version on the docket.

After SAC Wireless filed its post-hearing brief, *see* Dkt. 55, Mr. Brooks moved for an extension of time to respond. Dkt. 57. The court granted that motion on August 7, roughly a month after Mr. Brooks filed it, setting Mr. Brooks's response deadline for the following day, August 8, 2019. Dkt. 60. The court accordingly ordered Mr. Brooks to email his response to the chambers email address and to opposing counsel on August 8, and to mail a copy to the court on the same day. *Id*. Mr. Brooks did so, and the court entered Mr. Brooks's response on the docket that day. *See* docket text accompanying Dkt. 61.

### D.    The District Court Dismisses The Case With Prejudice As An Inherent Power Sanction.

On August 23, 2019, the district court granted SAC Wireless's motion for sanctions and dismissed the case with prejudice. A1-13. The court first discussed its inherent authority to sanction litigants for "conduct [that] abuses the judicial process." A2 (alteration in original) (citation omitted). The court then determined that Mr. Brooks's sanctions hearing was fair, because Mr. Brooks had been given ample opportunity to file any supporting affidavits or other documentary evidence, and to appear at the sanctions hearing. A4-5. The court detailed its finding that Mr. Brooks had received all of SAC Wireless's filings in support of its sanctions motion, and recounted the second opportunity afforded to Mr. Brooks to appear in person at the continued sanctions hearing. A5-6. The court described how Mr. Brooks appeared only telephonically, despite two opportunities to appear in person, but the court did not describe why it refused to allow Mr. Brooks to testify telephonically. *See* A4-7.

The district court then made several findings of fact. First, the court recounted the testimony regarding "[Mr.] Brooks's conduct and attitude toward opposing counsel and the

witnesses." A8. The court found that "[Mr.] Brooks' tone and demeanor were hostile and contemptuous," based on the fact that the witnesses' accounts "corroborate[d] each other." *Id*. Second, the district court detailed the testimony from other witnesses about Mr. Brooks's "loud and aggressive" conduct after the deposition on the second day. A10-11. The court found that this testimony was "credible." A12.

The court also described the testimony from two witnesses, Mr. Hamm and SAC Wireless's in-house counsel, that Mr. Brooks made "a more specific threat." A8. The district court determined that Mr. Hamm credibly testified that he was generally fearful that Mr. Brooks would attack opposing counsel during the depositions, and recounted similar testimony from SAC Wireless's in-house counsel. A9-10. The court then found that there was "[c]lear [e]vidence" that Mr. Brooks had made a "thinly veiled" threat against Mr. Hamm by stating "I'll see you in Atlanta." A11-12. The court noted that Mr. Brooks had presented no evidence, other than his own assertions in his response brief, to counter the "credibl[e]" testimony from Mr. Hamm and SAC Wireless's in-house counsel. A12. The court further determined that the testimony from the court reporters about Mr. Brooks's "overall hostility—while it might not be sanctionable in and of itself—bolster[ed]" the credibility of the specific testimony about Mr. Brooks's alleged threat. A11-12. Similarly, the court found that the testimony about Mr. Brooks's behavior on the second day of depositions "may not be sanctionable conduct on its own," but it "strengthen[ed] the likelihood" that Mr. Brooks had threatened Mr. Hamm on the previous day. A12.

Thus, the district court found that the sole conduct meriting sanction was the alleged threat Mr. Brooks made to Mr. Hamm when he stated, "I'll see you in Atlanta." A11-13. While the district court found that the evidence about Mr. Brooks's demeanor and behavior during the depositions corroborated that Mr. Brooks had made this threat, the district court did not find this

other behavior sanctionable in its own right, nor did it determine that this behavior evidenced any pattern of abuse of the litigation process.  A11-13.

Finally, the district court considered the appropriate sanction.  The court noted that Mr. Brooks had proposed no alternative sanction other than dismissal, and implicitly found that Mr. Brooks's threat was apparently ongoing, by noting that nothing other than dismissal "can alleviate the threat," other than "an extreme measure like hiring security for depositions and any in-person encounters between [Mr.] Brooks and SAC."  A13.  The court thus dismissed the case with prejudice.  *Id*.

## E.     Mr. Brooks Emails His Notice Of Appeal.

On September 23, 2019—thirty days after the court's judgment—Mr. Brooks emailed his notice of appeal to the chambers email address, the courtroom deputy, and opposing counsel, in accordance with the instructions the district court had previously given Mr. Brooks regarding how he was to file materials with the court.  App. Dkt. 5 at 6.  On the same day, Mr. Brooks mailed a copy of the notice of appeal to the clerk's office of the district court, with a scheduled delivery date of September 25.  *Id*. at 5.  The clerk's office received Mr. Brooks's notice of appeal on October 1, and entered it on the docket on October 7, retroactively marking it as filed on October 1.  Dkt. 69 & docket text accompanying Dkt. 69.

This Court appointed *Amicus Curiae* counsel to argue for the reversal of the district court's order, and also requested briefing regarding this Court's appellate jurisdiction.  App. Dkts. 2; 9; 10.

## STANDARD OF REVIEW

Federal courts consider jurisdictional issues on their own initiative.  *Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17 (2017).  But "a provision governing the time to appeal in a civil action qualifies as jurisdictional only if *Congress* sets the time."  *Id*.

(emphasis added).  In contrast, mere "claim-processing rules" are "less stern" and do not qualify as jurisdictional, and correspondingly, do not mandate dismissal for lack of compliance.  *See id.* at 17-18.

A "federal court has the inherent power to sanction" litigants for "conduct which abuses the judicial process."  *Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993).  A district court's findings of fact "underlying a decision to impose sanctions" are reviewed for clear error.  *Id.* at 1367 n.7.  The choice of sanction is reviewed for abuse of discretion.  *Id.* at 1367.

## SUMMARY OF ARGUMENT

This Court has jurisdiction over Mr. Brooks's appeal because Mr. Brooks emailed his notice of appeal to the district judge's chambers email address, following the instructions that the district court had repeatedly issued.  Through these instructions, the district court indicated that it would accept Mr. Brooks's emailed filings, and in fact did so throughout the litigation.  A local standing order stating that emails to court staff do not constitute filings does not compel otherwise.  As an initial matter, the district court indicated that the local standing order would not apply in this litigation, effectively overruling it, through its instructions to Mr. Brooks to email filings to the district judge.  Moreover, a local rule cannot deprive this Court of jurisdiction.  Mr. Brooks's email transmittal filed his notice of appeal.

As for the merits, this Court should reverse the district court's final judgment dismissing the case.  The district court based its sanction on a single, ambiguous statement that Mr. Brooks allegedly made to a witness, to the effect of "I'll see you" in the witness's hometown.  But dismissing the case based on this single statement was error, because the draconian sanction of dismissal is reserved for the most extreme cases, such as a *pattern* of sanctionable conduct.  A single instance of sanctionable conduct does not rise to this level.  This error was compounded because the district court did not adequately consider any alternative sanctions for the first instance

of sanctionable conduct, and because the record lacked key evidence to give context to the alleged threat.  Finally, courts should only dismiss a lawsuit as a sanction in egregious cases, and Mr. Brooks's statement cannot be considered egregious in context.  Indeed, the record reveals that SAC Wireless took no action in the face of Mr. Brooks's "threat"; it allowed depositions to continue after the "threat," on both that day and the following day.  The record thus plainly does not support a finding that Mr. Brooks's single statement could support a dismissal sanction, and the district court abused its discretion by imposing it.

**ARGUMENT**

**I.     This Court Has Jurisdiction Over Mr. Brooks's Appeal Because His Notice Of Appeal Was Timely Filed.**

A notice of appeal must be "filed" within thirty days of the entry of the district court's judgment.  28 U.S.C. § 2107.  This thirty-day time limit is jurisdictional.  *Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 21 (2017).  Nevertheless, "[a]n appeal must not be dismissed for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice."  Fed. R. App. P. 3(c)(4).  A notice of appeal will "vest an appellate court with jurisdiction" unless it is "so riddled with errors that it cannot fairly be considered a notice of appeal."  *See Vince v. Rock Cnty., Wis.*, 604 F.3d 391, 393 (7th Cir. 2010).

**A.     Mr. Brooks's Timely Email Was Sufficient To File His Notice Of Appeal.**

The content of Mr. Brooks's notice of appeal undisputedly satisfied the requirements of the Federal Rules of Appellate Procedure.  *See* Dkt. 69; Fed. R. App. P. 3(c) (describing the required contents of the notice).  It is also undisputed that Mr. Brooks emailed his notice of appeal to the district judge's chambers, with a copy to opposing counsel, within the thirty-day

12

jurisdictional limit.  App. Dkt. 5 at 6.  The question, then, is simply whether Mr. Brooks's email constituted a "filing."

The answer to that question is yes.  Federal Rule of Civil Procedure 5 prescribes the options for filing, one of which is to deliver it "to a judge who agrees to accept it for filing."  Fed. R. Civ. P. 5(d)(2)(B); *see also Halfen v. United States*, 324 F.2d 52, 54 (10th Cir. 1963) ("The fact that appellant's Notice of Appeal was mailed to and received by the Judge rather than the Clerk makes no difference as the Clerk is merely an arm of the court.").  That is precisely what happened here— the district judge previously agreed to accept filings when he explicitly directed Mr. Brooks to email his filings directly to the district judge's chambers.  *See* Dkts. 30; 60.  The district judge explained that mailed filings "take a while to get here, and then we have to scan it," and an emailed filing to chambers would allow the court to receive the filing faster.  *See* Jan. 1, 2019 Tr. at 31-32. Moreover, the court repeatedly accepted Mr. Brooks's emailed documents and put them on the docket as properly filed.  *See* docket text accompanying Dkt. 48 ("This was emailed to the courtroom deputy with a cc: to defense counsel. Because Plaintiff is not an E-filer, the Court uploaded this to the docket on his behalf in the interests of time.").  In fact, the district court ruled on one of Mr. Brooks's emailed filings before the mailed filing even reached the district court— the court received the emailed continuance motion on April 19, and entered it on the docket as "filed," and then ruled on it the same day.  Dkts. 48; 49; *see* docket text accompanying Dkt. 48. The district court clerk did not even *receive* the mailed filing until three days later, on April 22, and entered it on the docket on April 24.  Dkt. 51 & docket text accompanying Dkt. 51.  The court could not have ruled on Mr. Brooks's continuance motion unless the motion had been "filed" at the time of its ruling on April 19.

Thus, the district judge's course of conduct clearly demonstrated that he had agreed to accept materials for filing under Federal Rule of Civil Procedure 5(d)(2)(B).  It would be grossly prejudicial to allow the judge to withdraw that permission with no notice to Mr. Brooks.  *Cf. Hutter N. Tr. v. Door Cnty. Chamber of Com.*, 467 F.2d 1075, 1078 (7th Cir. 1972) (describing the district court's "incongruous" application of rules against *pro se* plaintiff as "requir[ing] him "to turn such square corners"); *see also Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) ("We are cognizant of the unique challenges facing pro se litigants and are generally disposed toward providing a litigant the benefit of appellate review.").  Accordingly, Mr. Brooks properly filed his notice of appeal by delivering it to the district judge via email within thirty days of the final judgment.[5]

### B.    A Local Standing Order Prohibiting Email Filing To Court Staff Does Not Deprive This Court Of Jurisdiction.

In its response to Mr. Brooks's *pro se* jurisdictional memorandum, SAC Wireless argued that Mr. Brooks's email was insufficient due to a local standing order that states: "An email or fax transmission to Court staff does not constitute a filing."  *See* App. Dkt. 8 at 2; N.D. Ill. Gen. Ord. on Electronic Case Filing 16-0020.  As an initial matter, Mr. Brooks did not violate the local standing order, which applies to emails directed to "Court staff."  Mr. Brooks was instructed to send filings to the district judge's proposed order email address by the district judge himself.  *See* Dkts. 30; 60; Jan. 16, 2019 Tr. at 31-32.  Following the court's instruction is not an unsolicited email to "Court staff."

---

[5] Emailing the notice of appeal to the district judge's chambers satisfies Rule 5(d)(2)'s "deliver[y]" requirement on its face, because email "delivers" the notice.  It is true that delivery to a district judge is described in Rule 5 as a type of "nonelectronic filing," but the context of the rule clearly indicates that "nonelectronic" is used to mean filing by means other than the court's Electronic Case Filing system.  *See* Fed. R. Civ. P. 5(d)(3)(C) (describing electronic filing as "[a] filing made through a person's electronic-filing account").

But even assuming that emailing the notice of appeal ran afoul of General Order 16-0020, that error does not defeat this Court's jurisdiction for two reasons: (1) filing by electronic means when local rules call for paper is a "mere error of form," and (2) local rules do not act as a bar to appellate jurisdiction.

*First*, this Court's precedent is clear that filing a notice of appeal electronically, notwithstanding a local paper filing mandate, is a "mere error of form" and does not defeat appellate jurisdiction. *United States v. Harvey*, 516 F.3d 553, 556 (7th Cir. 2008). In *Harvey*, a criminal defendant (represented by counsel) filed an electronic notice of appeal notwithstanding a local rule requiring "such notices to be filed on paper." *Id.* at 554. This Court determined that it had jurisdiction pursuant to Federal Rule of Civil Procedure 5(e) (now codified as Rule 5(d)(4)), which prohibits rejection of a filing "solely because it is not in the form prescribed by these rules or by a local rule or practice." Fed. R. Civ. P. 5(d)(4). The Court explained that "Rule 5[(d)(4)]'s protection regarding errors of form 'covers all matters regulated by the rules of procedure.'" *Harvey*, 516 F.3d at 556 (quoting *Farzana K. v. Ind. Dep't of Educ.*, 473 F.3d 703, 707 (7th Cir. 2007)); *see also Vince*, 604 F.3d at 393 ("Counsel's failure to electronically transmit [the plaintiff]'s notice of appeal with the proper event code was an error of form" and therefore did not defeat appellate jurisdiction); *Contino v. United States*, 535 F.3d 124, 126-27 (2d Cir. 2008) (agreeing with *Harvey* that filing a notice of appeal in a manner that violates a local rule does not deprive the court of appeals of jurisdiction); *Klemm v. Astrue*, 543 F.3d 1139, 1143 (9th Cir. 2008) ("[F]iling requirements dictated by local rules are not jurisdictional. Local rules govern local practice, but a violation of local rules cannot divest this court [of appeals] of the jurisdiction afforded to it by Congress." (citation omitted)).

*Harvey* is controlling. That case makes clear that a local rule prescribing whether filings can be delivered in a certain paper or electronic manner is a "matter[] regulated by the rules of procedure," that falls under Rule 5(d)(4)'s protection. *Harvey*, 516 F.3d at 556 (quoting *Farzana*, 473 F.3d at 707). General Order 16-0020 is similarly a matter regulated by the rules of procedure, because it prohibits certain types of electronic filing—namely, emails to court staff. Thus, a filing that runs afoul of General Order 16-0020 cannot be rejected solely on this basis. *Harvey* established that this kind of error is a "mere error of form." *See Harvey*, 516 F.3d at 556. Accordingly, Mr. Brooks's email accomplished the "filing" of his notice of appeal (notwithstanding that the judge declined to enter it on the docket), and his notice of appeal was therefore filed by the requisite deadline.

*Second*, it is well-established that a violation of a local rule cannot, in itself, deprive this Court of jurisdiction. The only jurisdictional requirements are those prescribed by Congress. *See Hamer*, 138 S. Ct. at 21. Local rules promulgated by a single district court cannot superimpose additional jurisdictional requirements on the courts of appeals. Accordingly, "noncompliance with a court's local rules does not create a jurisdictional bar for the district court or for [the Court of Appeals]." *Brengettcy v. Horton*, 423 F.3d 674, 681 (7th Cir. 2005); *see Brown v. Lirios*, 391 F. App'x 539, 541 (7th Cir. 2010) (quoting *Brengettcy*, 423 F.3d at 681).[6]

---

[6] Other circuits agree that violation of a local rule does not deprive a court of jurisdiction. *See Klemm*, 543 F.3d at 1143 ("Klemm's failures [to comply with local electronic filing requirements] do not defeat our jurisdiction, however, because filing requirements dictated by local rules are not jurisdictional."); *cf. Briggs v. Rendlen (In re Reed)*, 943 F.3d 849, 852 (8th Cir. 2019) ("The district court erred in striking the notice of appeal without allowing Briggs an opportunity to cure the defect [from failure to comply with a local rule] because doing so wrongly treated the defect as jurisdictional."); *In re Strickland & Davis Int'l, Inc.*, 612 F. App'x 971, 977 (11th Cir. 2015) ("[T]he requirement that corporations be represented by counsel is not a creation of Congress . . . . It thus does not implicate a court's jurisdictional grant from Congress."); *see also Durst v. Durst*, 663 F. App'x 231, 236 n.7 (3d Cir. 2016) ("[E]ven though the motion was untimely under the Local Rule . . . the District Court did not lack jurisdiction to consider the motion."); *Bank of*

There is no *statutory* prohibition on an email filing to a judge's chambers as a manner of filing a notice of appeal. The statute addressing notices of appeal, 28 U.S.C. § 2107, requires only that a notice of appeal be "filed," with no limitations on the manner of filing. *Id.* Federal Rules of Appellate Procedure 3 and 4 indicate that the notice must be filed with the clerk, but again, because that prescription appears only in a local standing order, it cannot deprive this Court of jurisdiction.[7]

In fact, the COVID-19 crisis has plainly revealed that local prohibitions on email filings are not jurisdictional. The very same district court has suspended its own local rules against email filing. N.D. Ill. Fourth Amended Gen. Ord. 20-0012, at 6 (May 26, 2020). ("The Court suspends through July 15, 2020, the prohibition against pro se parties emailing their filings to the Clerk's Office."). The district court, similarly, functionally suspended this local standing order by specifically *requesting* that Mr. Brooks submit his filings to the chambers email address. *See* Dkts. 30; 60. The local standing order is not a jurisdictional bar to filing.

### C. This Court Should Not Dismiss Mr. Brooks's Appeal For Failing To Comply With A Claim-Processing Rule Contained In The Local Standing Order Prohibiting Email Filing To Court Staff.

This Court thus has jurisdiction over Mr. Brooks's appeal. To the extent SAC Wireless suggests that this Court should nevertheless dismiss Mr. Brooks's appeal because he did not comply with General Order 16-0020, this Court should decline that invitation. *First*, "[a] local

---

*La. v. SunGard Availability Servs., L.P.*, 374 F. App'x 539, 542 (5th Cir. 2010) ("[L]ocal rules are not jurisdictional . . . .").

[7] Indeed, Congress, in other statutes, has required certain materials to be filed "with the clerk," but did not add that specificity to § 2107. *See* 28 U.S.C. § 753(b). "When 'Congress includes particular language in one section of a statute but omits it in another section of the same Act,' . . . 'it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Clay v. United States*, 537 U.S. 522, 528-29 (2003) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply." Fed. R. Civ. P. 83(a)(2).[8] Mr. Brooks's violation of the standing order was not willful—he simply followed the instructions that the district judge had given throughout the litigation.

*Second*, SAC Wireless was not prejudiced by the email filing. It is undisputed that opposing counsel was aware of Mr. Brooks's emailed notice of appeal; Mr. Brooks copied opposing counsel on that email, as the district judge had instructed when he first directed Mr. Brooks to file via email. *See* App. Dkt. 5 at 6 (copying opposing counsel); Dkt. 30. This Court should not dismiss an appeal for failure to abide by a non-jurisdictional claims processing rule when the opposing party suffered no prejudice. *See Mayle v. Illinois*, 956 F.3d 966, 969 (7th Cir. 2020) (discussing discretion to overlook non-jurisdictional mistakes, "particularly if they cause no significant harm"); *cf. Han Tak Lee v. Houtzdale SCI*, 798 F.3d 159, 164 (3d Cir. 2015) (determining that filing notice of appeal via paper submission in the face of electronic filing requirement did not defeat jurisdiction, especially when appellee "fail[ed] to argue that the paper submission prejudiced him in any way").

Indeed, though SAC Wireless has not been prejudiced, Mr. Brooks would be significantly prejudiced if this Court dismissed his appeal based on the local standing order. As described above, the district judge repeatedly directed Mr. Brooks to file materials via email. To allow the district judge to withdraw that permission with no warning is unfair. *Cf. Anderson*, 241 F.3d at

---

[8] Similarly, the Rules Committee has made clear that Federal Rules of Appellate Procedure 3 and 4 should be interpreted to allow, not to reject, filings as a general matter. In adopting these rules, the Rules Committee urged that interpretation of these rules should "dispense with literal compliance in cases in which it cannot fairly be exacted." *See* Fed. R. App. P. 3 advisory committee notes (approvingly citing cases in which the court allowed mailings directly to judges to suffice for a notice of appeal).

545 ("We are cognizant of the unique challenges facing pro se litigants and are generally disposed toward providing a litigant the benefit of appellate review."). Moreover, doing so would run counter to this Court's repeated admonition that courts should take a "liberal" view toward *pro se* litigants. *See Greyer v. Ill. Dep't of Corr.*, 933 F.3d 871, 878 (7th Cir. 2019).

This case starkly illustrates the need for that liberal approach to *pro se* filings, because it reveals the filing difficulties facing non-local *pro se* litigants. Mr. Brooks mailed his notice of appeal on September 23 with an expected delivery date of September 25, two days later. *See* App. Dkt. 5 at 4-5. Such mailed filings are subject to the clerk's office need to process significant volumes of mail daily—here, the clerk did not process the notice of appeal as "received" until October 1, six days later.[9] *See* Dkt. 69. If the Court were to force strict compliance with these claim-processing rules, out-of-town *pro se* litigants would have to mail their filings to the clerk's office far in advance of the deadline to ensure timely receipt and processing by the clerk. Indeed, the district judge himself was aware that the clerk's office experiences some delay in processing mailed filings. *See* Jan. 16, 2019 Tr. at 31-32 (asking Mr. Brooks to email his next filing, "and that way if you mail in the response, and it is going to take a while to get here, and then we have to scan it, and so on").

In sum, Mr. Brooks followed the district judge's instructions when filing his notice of appeal—he emailed a copy to the chambers email address, copying opposing counsel. There is no dispute that the email was received by the district court, and by SAC Wireless, within the thirty

---

[9] There is no indication, however, that this delay in stamping and processing the notice of appeal stemmed from a delay in the clerk's office receiving the mailing itself. *Cf. Boomer v. AT&T Corp.*, 309 F.3d 404, 415 n.5 (7th Cir. 2002) (Under the common law mailbox rule, a legal presumption arises that when a letter is properly addressed and mailed, "it reached its destination in usual time and was actually received by the person to whom it was addressed." (citation omitted)).

days required to file a notice of appeal. The district court's local standing order does not deprive this Court of jurisdiction over Mr. Brooks's timely filed notice of appeal.

## II. The District Court Abused Its Discretion By Dismissing Mr. Brooks's Case On The Basis Of A Single Alleged Statement And Clearly Erred By Finding That Mr. Brooks Threatened A Witness.

On the merits, the district court abused its discretion by dismissing Mr. Brooks's suit with prejudice based on a single statement that—when understood in context—was not a threat. "[T]he particular sanction of dismissal with prejudice or judgment is 'draconian,' and 'must be infrequently resorted to by district courts[.]'" *Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993) (quoting *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 223 (7th Cir. 1992) and *Schilling Walworth Cnty. Park & Plan. Comm'n*, 805 F.2d 272, 275 (7th Cir. 1986)). "A dismissal with prejudice is a harsh sanction which should usually be employed only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing." *Barnhill*, 11 F.3d at 1367 (quoting *Webber v. Eye Corp.*, 721 F.2d 1067, 1069 (7th Cir. 1983)). Sanctions under the court's inherent power "must be used only with great caution. This is especially true if the court uses the ultimate sanction of dismissal[.]" *Kovilic Constr. Co. v. Missbrenner*, 106 F.3d 768, 773 (7th Cir. 1997).

Courts have reversed dismissal as a sanction when the appellant's actions did not show a "pattern" of problematic conduct and when "[t]he record does not reveal any consideration of alternative, lesser sanctions." *Long v. Steepro*, 213 F.3d 983, 988 (7th Cir. 2000); *see Rivera v. Drake*, 767 F.3d 685, 686 (7th Cir. 2014) ("We require district judges to consider other sanctions before resorting to dismissal."). Similarly, a sanctions order grounded in factual findings that are based on a "murky record" goes "too far" and should be reversed. *See Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 916-17 (7th Cir. 2015).

Here, all of those concerns are present and the district court thus erred in four respects: (1) by dismissing the case based on a single instance of allegedly sanctionable conduct, (2) by failing to consider lesser sanctions, (3) by imposing the ultimate, last-resort sanction without the benefit of key evidence, and (4) by dismissing the case based on conduct that was not actually a threat.

### A.     A Single Instance Of An Alleged Threat Is Not Sufficiently Egregious To Warrant Dismissal As A Sanction.

This Court has agreed that imposing the sanction of dismissal is generally "out of proportion" with "a single act of violative conduct." *Ladien v. Astrachan*, 128 F.3d 1051, 1057 (7th Cir. 1997). Rather, dismissal is reserved for cases where there is a *pattern* of egregious conduct or abuse of the judicial process. *See, e.g., Waivio v. Bd. of Trs. of Univ. of Ill. at Chicago*, 290 F. App'x 935, 937 (7th Cir. 2008) (dismissal appropriate when plaintiff "threatened to kill one opposing lawyer, tried to physically restrain him, and verbally harassed him in courthouse hallways" and "twice filed documents with the court accusing two of the lawyers of having 'killed the plaintiff's baby.'"); *Fuery v. City of Chicago*, 900 F.3d 450, 464 (7th Cir. 2018) (dismissal appropriate for conduct that was "repeated, frequent, willful and intentional"); *Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652, 657 (7th Cir. 2003) (dismissal was warranted for including with complaint "a bevy of falsified documents" that "amounted to a veritable attack on our system of justice"); *Dotson v. Bravo*, 321 F.3d 663, 668-69 (7th Cir. 2003) (sanction of dismissal appropriate when presented with an "overall scheme to defraud 'all aspects of the judicial process'") (citation omitted); *Greviskes v. Universities Research Ass'n*, 417 F.3d 752, 759 (7th Cir. 2005) (dismissal warranted in case with "record of delay" and pattern of "fraudulent misconduct").

Here, the district court did not find any pattern of sanctionable conduct. Instead, the district court based its sanction on Mr. Brooks's single alleged "threatening" statement that he would "see [the SAC witness] in Atlanta." A11-13. In fact, the district court found that this purported threat

21

was the *only* sanctionable conduct that Mr. Brooks apparently engaged in—*all* of Mr. Brooks's other behavior, the district court determined, was not sanctionable. A11-12.

This single instance comes nowhere close to repeated overt physical threats, or "a veritable attack on our system of justice." *See Jimenez*, 321 F.3d at 657. Nor was the conduct "repeated, frequent, willful and intentional." *See Fuery*, 900 F.3d at 464. The fact that the district court imposed the ultimate sanction—dismissal—based on "a single act of violative conduct" requires reversal. *Cf. Ladien*, 128 F.3d at 1057.

The remainder of Mr. Brooks's conduct—besides the alleged threat—did not exhibit a pattern of sanctionable conduct. *See* A11-12 (explaining that Mr. Brooks's general behavior was not itself sanctionable). Witnesses testified that Mr. Brooks was "frustrated," "[s]hort-tempered," and "unprofessional." Hearing Tr. at 17, 61, 116. Both court reporters, however, testified that Mr. Brooks's frustration stemmed in part from his lack of understanding of procedural rules as a *pro se* litigant. *See id*. at 17, 61. In fact, the witnesses from the law firm acknowledged that their concern about Mr. Brooks had little basis in their own observations. One witness testified he drew his conclusion about Mr. Brooks based solely on "the look of concern on [defense counsel's] face," and acknowledged that Mr. Brooks's statements were "inaudible." Hearing Tr. at 85. "[P]art of the reason" that witness viewed Mr. Brooks as threatening was that a recent workplace shooting elsewhere in Illinois was "fresh in [his] mind." *Id*. at 87. Another witness testified that he considered "the possibility of [Mr. Brooks] bringing a weapon into the building" simply because Mr. Brooks was "yelling" and "accused us of lying."[10] Hearing Tr. at 137. The witnesses viewed

---

[10] Social science acknowledges that African-American men are viewed as more threatening than others, even controlling for other factors. *See People See Black Men as Larger, More Threatening Than Same-Sized White Men*, Am. Psych. Ass'n (March 13, 2017), https://www.apa.org/news/press/releases/2017/03/black-men-threatening. Mr. Brooks attempted to elicit testimony about

Mr. Brooks as threatening simply because they were more accustomed to dealing with "very calm people" and "we're not used to seeing people that raise their voices." *See id*. at 86. But raising voices, expressing frustration, or otherwise not acting "very calm" is not inherently sanctionable, particularly with a case-dispositive sanction.

Concluding that any person in a deposition setting who expresses frustration or does not follow the norms that professional counsel are used to has engaged in sanctionable behavior is particularly unfair to *pro se* plaintiffs. When viewed in the "liberal light" afforded to *pro se* plaintiffs, the record indicates that Mr. Brooks's statement was the product of frustration, not a desire to threaten. *See Greyer*, 933 F.3d at 878 (vacating dismissal as a sanction when "[Plaintiff]'s explanation for his failures is plain: his mental health issues and illiteracy created a situation in which he did not fully understand what was being asked of him[.]"); *cf. Egersheim v. Gaud*, No. Civ. 07-5116, 2011 WL 13238544, at *4 (D.N.J. Nov. 30, 2011) ("[T]he Plaintiffs have no legal training and are proceeding in this matter *pro se*. Therefore, the Court finds that, based on Plaintiffs' level of legal sophistication, Plaintiffs['] action of making a statement at the deposition is not sufficient to warrant the extreme sanction of dismissal or an award of the costs for the deposition.").

In sum, Mr. Brooks engaged in—at most—a "single act of violative conduct," which is "out of proportion" with the pattern of egregious conduct needed to impose the sanction of dismissal. *See Ladien*, 128 F.3d at 1057; *cf. Nelson v. Schultz*, 878 F.3d 236, 239 (7th Cir. 2017) (explaining that district court did not abuse its discretion in dismissing case because the "violations were willful and repeated"). This Court has reversed dismissal as a sanction when the allegedly

---

whether his race affected the witnesses' view that he was a threat, but the court did not allow that line of questioning. Hearing Tr. at 94-95.

sanctionable behavior does not evidence a "pattern," and it should do so again here.  *Long*, 213 F.3d at 988.

**B.    The District Court Did Not Adequately Consider Lesser Sanctions.**

Dismissal was also an abuse of discretion because a lesser sanction would have sufficed. *See Rivera*, 767 F.3d at 686 ("We require district judges to consider other sanctions before resorting to dismissal.")  The district court here determined that it did not need to consider lesser sanctions because "there is nothing else that can alleviate the threat."  A13.  But there is no evidence in the record that indicates that Mr. Brooks made repeated threats or that any threat that Mr. Brooks may have made was ongoing.  According to Mr. Hamm himself, Mr. Brooks clarified immediately after making the statement that his statement was not a threat.  Hearing Tr. at 128. Even if a sanction is warranted for making such a statement in the heat of the moment, it was unreasonable to determine that a single statement, followed by clarification, represents an ongoing risk of harm.  *Cf. Montaño v. City of Chicago*, 535 F.3d 558, 564, 566 (7th Cir. 2008) (reversing sanctions dismissal when the record indicated inconsistencies in witness testimony, but did not support that witness "knowingly lie[d]").

Moreover, the district court's categorical determination that there was no "workable" alternative to dismissal ignores this Court's case law affirming monetary sanctions in far more egregious circumstances.  For example, in *Emerson v. Dart*, 900 F.3d 469, 473 (7th Cir. 2018), *reh'g denied* (Sept. 25, 2018), the plaintiff "targeted and publicly threatened potential witnesses" on social media.  The district court awarded, and this Court affirmed, a monetary sanction, even though this Court determined that the threat was unambiguous and succeeded in deterring a witness from testifying in person.  *Id.*  In this case, as explained below, Mr. Brooks's statement was ambiguous and neither Mr. Hamm nor anyone else took any action in response to the "threat." Because the district court lacked any evidence on which to base its conclusion that Mr. Brooks

24

presented an ongoing risk of harm, it was error to resort to dismissal without any consideration of lesser alternatives.  If this Court declines to reverse the judgment outright, it should nevertheless remand the case for the district court to consider alternative sanctions—such as a monetary fine, given that Mr. Brooks did not proceed *in forma pauperis*, or some form of evidentiary sanction, perhaps related to the pertinent deposition—in the first instance.

Moreover, "[t]he need for the district court to exercise discretion in deciding among alternative sanctions was especially great in this case, given the plaintiff's *pro se* status." *Schilling v. Walworth Cnty. Park & Planning Comm'n*, 805 F.2d 272, 277 (7th Cir. 1986).  Courts acknowledge that conduct that stems from the "hyperbolic outbursts" of *pro se* litigants does not warrant dismissal in the first instance.  *See, e.g., Ndulue v. The Fremont-Rideout Health Grp.*, No. 2:14-cv-00735, 2017 WL 1354560, at *3 (E.D. Cal. Apr. 13, 2017) (statements to the effect of "[y]ou are going to pay for this," "I will get you, I promise that," and "[y]ou won't like what happens" did not warrant the sanction of dismissal because they were "unrecorded, not inherently violent, and [came] from a pediatrician with an apparent history of hyperbolic outbursts"); *Meece v. Ray's, LLC*, No. 1:15-cv-00144, 2015 WL 13741207, at *2 (S.D. Ind. Nov. 23, 2015), *report and recommendation adopted*, 2016 WL 760950 (S.D. Ind. Feb. 19, 2016) (imposing monetary fine, not dismissal, as a sanction when plaintiff threatened a process server, which the court described as "reprehensible"); *Sunegova v. Vill. of Rye Brook*, No. 09-CV-4956, 2011 WL 6640424, at *7 (S.D.N.Y. Dec. 22, 2011) (although "[p]laintiff's threatening and inappropriate language has surfaced not in spur-of-the-moment comments in conferences, but in letters and other written communication that presumably involve some thought and care in their preparation," court still did not impose sanction of dismissal).

The district court's decision to proceed directly to dismissal, without considering alternative sanctions, was based on the apparent conclusion that a single heated comment revealed an ongoing threat that could not be contained. This conclusion lacks support in the record. If the Court does not reverse the sanctions order, the Court should nevertheless set aside the dismissal for the district court to consider alternative, lesser sanctions. *See Long*, 213 F.3d at 988 (reversing dismissal as sanction when conduct did not show a "*pattern*" which "might otherwise justify dismissal without first imposing lesser sanctions" (emphasis added)).

### C.     The District Court Abused Its Discretion In Dismissing The Case Because Key Evidence Was Absent From The Hearing.

The district court likewise abused its discretion in dismissing the case based on a single alleged threat because it did so based on only a partial record as to that alleged threat. The district court did not allow Mr. Brooks to testify, nor did it grant Mr. Brooks's request to obtain testimony from defense counsel. These decisions may not be reversible on their own. But without this testimony, Mr. Brooks was unable to present evidence on the key issue. Defense counsel was the only source of information about why Mr. Brooks was allowed back into the law firm, with no attempts to contact the court or alert anyone in authority at the law firm, until midway through the second day of depositions on February 22, well after his alleged "threat" during the very first deposition on February 21. Evidence about the decision to allow the depositions to continue on the first day, and to allow Mr. Brooks to return on the second day, was critical to Mr. Brooks's defense that he had not threatened anyone—because it showed that no one contemporaneously perceived his statement as a threat.

Mr. Brooks recognized this, explaining to the court that he wanted to examine defense counsel to show that those present at the February 21 depositions did not view his conduct as sufficiently "threatening" to bar him on February 22: "at the end of the deposition [on February

21], we agreed to meet the following day. So, apparently, something happened the following day [February 22] that made things go south, right?" Hearing Tr. at 147-48.

Because the district court did not allow Mr. Brooks either to call defense counsel as a witness or to testify telephonically himself, the record as to the alleged "threat" is far from clear. *See Birdo v. Urbanosky*, 619 F. App'x 536, 538 (7th Cir. 2015) (vacating district court's dismissal for alleged threatening behavior after shard of glass was discovered in one of plaintiff's mailings to court, because court did not have the benefit of plaintiff's testimony "to deny involvement"). The absence of this evidence thus weighs against imposing the ultimate sanction on a "murky record." *See Philos Techs., Inc.*, 802 F.3d at 916 (vacating imposition of sanctions when key factual issues were missing and "not adequately explored" in the record). Without the ability to consider this relevant evidence, the district court was without a "clear record" of "contumacious conduct," *Barnhill*, 11 F.3d at 1367, and therefore abused its discretion by imposing the extreme sanction of dismissal.

### D. The District Court Clearly Erred In Finding That Mr. Brooks Threatened A Witness.

Finally, even assuming that a litigant could engage in a single instance of conduct that was sufficiently egregious to warrant dismissal in the first instance, Mr. Brooks's alleged statement that he would see Mr. Hamm in Atlanta does not rise to this level. The district court based its sanction solely on the factual finding that this statement was a threat to Mr. Hamm. A13. But this factual finding is clearly erroneous and not supported by the record. And even if the district court was correct in finding that Mr. Brooks made the statement, it does not justify the draconian sanction of dismissal because the witnesses' contemporaneous actions revealed that no one present considered this statement to be a "threat." The statement was thus not sufficiently egregious to warrant dismissal in the absence of any other sanctionable conduct.

*First*, no one attempted to prevent Mr. Brooks from returning for more depositions after the alleged "threat" occurred. Mr. Brooks made his alleged "threat" on the first day of depositions, February 21, but defense counsel allowed Mr. Brooks to return for the second day on February 22. There was no complaint to the court on February 21, nor even an effort to warn the office leadership of defense counsel's firm that a person who had "threatened" a witness would be coming to the office for multiple depositions the following day. Neither the managing partner of the office nor the office administrator responsible for security were even aware of Mr. Brooks's existence until they observed him directly on February 22. Hearing Tr. at 50, 82, 90. The law firm's office managing partner testified that it was he who decided to bar Mr. Brooks from the office—with no knowledge of the "threat." *Id*. at 44, 48. Defense counsel apparently even briefly resisted the decision to exclude Mr. Brooks from the office. *Id*. at 48. Mr. Brooks was excluded from defense counsel's office because he was allegedly "loud" and disruptive on February 22 after defense counsel tried to change the time of his deposition, not because of any "threat" he supposedly made on February 21.

This lack of a contemporaneous response to the alleged "threat" on February 21 makes the subsequent testimony that witnesses considered Mr. Brooks's statement to Mr. Hamm "threatening" to be plainly incredible. *See Michael v. Boutwell*, 138 F. Supp. 3d 761, 786 (N.D. Miss. 2015) (testimony that witness felt threatened by party did not weigh in favor of sanction given that threat did not affect witness's subsequent conduct); *cf. McArthur v. Source Gas, LLC*, No. 10-cv-02327, 2011 WL 7063333, at *15 (D. Colo. Dec. 20, 2011), *report and recommendation adopted*, 2012 WL 161597 (D. Colo. Jan. 18, 2012) (recommending sanction for "pattern" of abuses, including actions that prompted defense counsel to "implement enhanced security" "[i]mmediately preceding and following" plaintiff's actions).

*Second*, Mr. Hamm himself also took no actions consistent with a belief that he had been threatened. Mr. Hamm testified that he decided not to call the police in his hometown, although Mr. Brooks had allegedly referenced where Mr. Hamm lived. Hearing Tr. at 115.[11] Mr. Hamm further testified that it was defense counsel, not Mr. Hamm himself, who first characterized the statement as a "threat," by asking whether Mr. Brooks had meant to threaten Mr. Hamm. *Id*. at 128. Mr. Hamm acknowledged that after defense counsel asked Mr. Brooks this question, Mr. Brooks responded "it's not what I was saying or not what I was meaning." *Id*.

*Third*, the record indeed shows that SAC Wireless was inclined to view Mr. Brooks's statements as "threats" in general, even when the circumstances clearly indicated that such statements were not threatening. For example, at the conclusion of Mr. Hamm's deposition, Mr. Brooks announced that he was "done with this deposition." Dkt. 39-7 at 118. Defense counsel asked if *that* was a threat, to which Mr. Brooks responded that it was a statement at face value: "No, I'm telling you, okay, I'm done with Mr. Hamm." *Id*. Not long after, Mr. Brooks made his statement about going to Atlanta, and defense counsel again asked if Mr. Brooks was making a threat, and Mr. Brooks again responded that was not his intention. *See* Hearing Tr. at 128. Witnesses were thus apparently prepared to view Mr. Brooks's statements as threats, even though Mr. Brooks quickly set the record straight each time.[12] These circumstances show that these statements were not sufficiently egregious to warrant dismissal.

---

[11] Mr. Hamm was not asked on direct examination why he did not file a police report. Mr. Brooks attempted to ask Mr. Hamm about this on re-cross, following the court's inquiry about what happened immediately following Mr. Brooks's supposed "threat," but the court did not allow that line of inquiry. *See* Hearing Tr. at 129.

[12] *Cf. People See Black Men as Larger, More Threatening Than Same-Sized White Men*, Am. Psych. Ass'n (March 13, 2017), https://www.apa.org/news/press/releases/2017/03/black-men-threatening ("People have a tendency to perceive black men as larger and more threatening than similarly sized white men[.]"); Craig St. John & Tamara Heald-Moore, *Fear of Black Strangers*, 24 Soc. Sci. Rsch. 262, 277 (1995) ("Among whites[,] encounters with black strangers evoke more

*Fourth*, the court did not consider any evidence of Mr. Hamm's bias that would impact his credibility. At the hearing, Mr. Brooks attempted to cross examine Mr. Hamm about these biases, asking Mr. Hamm if he was frustrated that Mr. Brooks had noticed Mr. Hamm's deposition. *See* Hearing Tr. at 118-19. The district court refused to allow Mr. Brooks to ask Mr. Hamm about "any potential biases [Mr. Hamm] may have against [Mr. Brooks]." *Id.* at 119. But these biases are plainly relevant to Mr. Hamm's credibility, especially in light of the fact that Mr. Hamm took no contemporaneous action regarding the "threat." Mr. Hamm and Mr. Brooks had known each other since 2001. *See* Hearing Tr. at 124; Dkt. 39-7 at 73 (Mr. Hamm stating: "You know what it's about, Rufus."). The acrimony between Mr. Hamm and Mr. Brooks was mutual; the bulk of Mr. Brooks's deposition questions concerned an email that Mr. Hamm had sent to SAC colleagues about Mr. Brooks, suggesting that Mr. Brooks filed meritless lawsuits. Dkt. 39-7 at 82-85. It is easily plausible that Mr. Hamm, after the deposition had concluded, agreed to go along with others' views of the "threat" to avoid further participation in what Mr. Hamm viewed as a nuisance lawsuit.

The district court clearly erred in finding that Mr. Brooks's statement was a threat. Even if it were permissible to dismiss a suit with prejudice for a single alleged "threat," the statement here did not constitute a "threat" at all. At a minimum, Mr. Brooks's statement is sufficiently ambiguous that it does not rise to the level of such egregious conduct to warrant dismissal.

## CONCLUSION

As set forth above, this Court has jurisdiction over this appeal, and should reverse the district court's judgment. Setting aside the dismissal sanction is warranted by the district court's

---

fear than encounters with white strangers independent of the age and gender of the persons encountered, the contexts in which the encounters take place, and the age and gender of the person experiencing the encounter.").

clearly erroneous factual findings, and independently, by the imposition of the ultimate sanction of dismissal.  In the alternative, the Court should vacate the district court judge's dismissal and remand for consideration of alternative sanctions.

Dated: August 5, 2020                                        Respectfully submitted,

                                                             */s/ Michael T. Brody*
                                                             Michael T. Brody
                                                             *Counsel of Record*
                                                             Leigh J. Jahnig
                                                             Jenner & Block LLP
                                                             353 N. Clark Street
                                                             Chicago, IL  60654-3456
                                                             (312) 222-9350
                                                             mbrody@jenner.com

                                                             Jessica Ring Amunson
                                                             Jenner & Block LLP
                                                             1099 New York Avenue, NW
                                                             Suite 900
                                                             Washington, DC 20001-4412
                                                             (202) 639-6023

                                                             *Court-Appointed Amicus Curiae*

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), Circuit Rule 32(c), and this Court's Order of July 17, 2020 (App. Dkt. 24), because, according to the word count function of Microsoft Word 2016, this brief contains 10,373 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 12 point Times New Roman for the main text and footnotes.

Dated: August 5, 2020

/s/ Michael T. Brody
Michael T. Brody

**CIRCUIT RULE 30(d) STATEMENT**

Pursuant to Circuit Rule 30(d), I, Michael T. Brody, an attorney, certify that all material required by Circuit Rule 30(a) and (b) is included in the required short appendix bound with this brief.

Dated: August 5, 2020

*/s/ Michael T. Brody*
Michael T. Brody

**CERTIFICATE OF SERVICE**

I, Michael T. Brody, an attorney, hereby certify that on August 5, 2020, I caused the **Brief and Required Short Appendix of Court-Appointed *Amicus Curiae* in Support of Plaintiff-Appellant** to be electronically filed with the Clerk of the Court for the United States Court Of Appeals for the Seventh Circuit by using the CM/ECF system, which will accomplish service on all participants on this case who are registered CM/ECF users.  I further certify that I served a copy of the accepted brief on Plaintiff-Appellant Rufus Brooks via electronic mail and UPS overnight delivery to the addresses listed below.

Rufus L. Brooks
14016 Myrtlewood Drive
Orlando, Florida 32832
Brooks.rufus@yahoo.com

Pursuant to ECF procedure (h)(2) and Circuit Rule 31(b), and upon notice of this Court's acceptance of the electronic brief for filing, I certify that I will cause 15 copies of the **Brief and Required Short Appendix of Court-Appointed *Amicus Curiae* in Support of Plaintiff-Appellant** to be transmitted to the court via UPS overnight delivery, postage prepaid within seven days of that date.

*/s/ Michael T. Brody*
Michael T. Brody
*Court-Appointed Amicus Curiae*

## INDEX TO REQUIRED SHORT APPENDIX

Memorandum Opinion And Order
    (Aug. 23, 2019) (Dkt. 67) ...............................................................................A1

Judgment In A Civil Case
    (Aug. 23, 2019) (Dkt. 68) .............................................................................A14

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| RUFUS BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 03472 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| SAC WIRELESS, LLC | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rufus Brooks has sued SAC Wireless, LLC for employment discrimination. R. 1, Compl.[1] During the course of discovery, Defendant SAC Wireless filed a motion to dismiss as a sanction for Brooks' alleged misconduct during depositions. R. 35, Mot. Sanctions. After holding a live-witness hearing and on reviewing the parties' briefing, the Court grants SAC's motion and dismisses the case with prejudice.

## I. Background

Brooks filed this case in May 2018, alleging that he had applied for 60 positions at SAC and was not hired for any of them due to his race or age. *See generally* Compl. Discovery began, and on February 21 and 22, 2019, Brooks was scheduled to take depositions of three SAC employees, Jeff Hamm, Kevin Pope, and Wanda Rodriguez, at the Chicago office of SAC's counsel, the law firm Thompson Coburn. Mot. Sanctions

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331. Citations to the docket are noted by "R." followed by the docket number and, where necessary, a page or paragraph citation.

¶¶ 1-2. In turn, SAC's deposition of Brooks was scheduled for the afternoon of February 22. *Id.* ¶ 2. Susan Lorenc, a partner at Thompson Coburn and a counsel of record for SAC, defended the first three depositions, which were of the SAC employees (the third took place on the morning of February 22). On the afternoon of the second day of depositions (February 22), SAC filed a motion "to terminate litigation and for sanctions" alleging that Brooks had behaved aggressively and threatened a witness during the depositions. *See generally* Mot. Sanctions. SAC was so alarmed that the motion also said that Brooks would not be allowed back into Thompson Coburn's office for his deposition that afternoon. *Id.* ¶ 3. After receiving the motion for sanctions, the Court set a briefing schedule and directed SAC to supplement the motion with affidavits and transcripts to back up its allegations. R. 37, 2/23/19 Minute Order. The Court also scheduled an evidentiary hearing for April 2, 2019 at 1:30 p.m. *Id.*

## II. Legal Standard

District courts have inherent authority to sanction litigants for "conduct [that] abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). That includes the power to dismiss a case if the misconduct is egregious enough. *Id.* In order to impose sanctions, a federal court must find by a preponderance of the evidence that "the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776-79 (7th Cir. 2016) (rejecting a clear-and-convincing evidence requirement for sanctions imposed both under Rule 37 and under the Court's inherent authority).

After making that initial factual finding, a court has broad discretion to choose a sanction. That said, Seventh Circuit decisions instruct that in choosing the appropriate level of sanction to impose, a district court should keep an eye both to the egregiousness of the abuse of process alleged, as well as to whether the plaintiff should have known better. In *Ladien v. Astrachan*, the Seventh Circuit suggested that it might have reversed a dismissal if "the district court had dismissed [the] case for a *single act* of violative conduct." 128 F.3d 1051, 1057 (7th Cir. 1997) (emphasis added). But in that case, in which the plaintiff had repeatedly contacted the represented defendants directly after the court warned him not to; failed many times to respond timely and adequately to discovery requests; and threatened to pursue criminal charges against the defendants if they did not settle, the Seventh Circuit found that dismissal was not an abuse of the trial court's discretion. *Id*.

An opportunity to be heard is important too. The Seventh Circuit reversed a dismissal sanction where the plaintiff was not given a fair opportunity to respond to the allegation against him. In *Birdo v. Urbansky*, the clerk's office received a filing from the Plaintiff that contained a shard of glass. 619 F. App'x 536, 536-38 (7th Cir. 2015) (nonprecedential disposition). The district court immediately dismissed the case with prejudice, without giving the plaintiff an opportunity to contest the factual basis for the dismissal. *Id*. at 537. The Seventh Circuit reversed for that reason, noting that the plaintiff had never done anything threatening before. *Id*. at 536-38.

3

### III. Analysis

### A. The Fairness of Brooks's Hearing

Throughout the litigation of SAC's motion for sanctions, Brooks frequently contended that he was denied a fair opportunity to present his side of the story. That is wrong. After SAC filed its motion for sanctions on February 22, 2019, the Court ordered briefing. R. 37, 2/23/19 Minute Order. Brooks was directed to file a response by March 20 that included "pertinent evidence, including his own under-oath affidavit." *Id*. The Court also set a hearing on the motion for April 2, 2019. *Id*. The order specified not only that it would be a "live-witness" hearing but further required that the parties "*arrange for witness attendance* (including testimony by the court reporter)." *Id*. (emphasis added). On March 6, SAC filed a supplement to its motion, including affidavits from several witnesses. R. 39, Def.'s Supp. Later that month, Brooks filed his response, which made no reference to SAC's supplement or any difficulty Brooks might have had in accessing it (this becomes important later, as explained below). R. 40, Pl.'s Resp. It also failed to include an affidavit or any other evidence. *Id*. SAC then filed its reply. R. 41, Def.'s. Reply.

One day before the scheduled hearing, Brooks called the courtroom deputy to arrange to appear telephonically. R. 42, 4/1/19 Minute Order. The Court entered an order explaining that it should have been obvious that Brooks's in-person appearance would be required for a "live witness hearing." *Id*. Nevertheless, "[o]ut of mercy and not good cause," the Court allowed Brooks to appear by telephone at the hearing. *Id*. At the hearing itself, Brooks claimed for the first time that he had not received SAC's

4

supplement, R. 39, including its witnesses' affidavits. R. 44, 4/2/19 Minute Entry; R. 55-1, Def.'s Exh. A, Hrg. Tr. at 6:14-25. On the record, the Court made a finding that Brooks *had* in fact received the supplement. The Court's finding was based on the record evidence. First, the CM/ECF receipt from the filing showed that it was successfully sent to his email address. R. 44-1, CM/ECF Receipt; Hrg. Tr. at 7:1-13, 11:8-12. Second, SAC's counsel, Susan Lorenc, credibly reported that she emailed it directly to Brooks and that it did not bounce back. Hrg. Tr. at 9:4-16. Third, Brooks had participated in active litigation in the case since May 2018 without ever reporting a problem receiving CM/ECF filings to his email account. *See* Hrg. Tr. at 12:3-13:5. And finally, the supplement was required to be filed by the Court's initial order, R. 37, and referenced on the first page of SAC's reply, R. 41 ¶ 1, making it implausible that Brooks—who has not shrunk from filing motions and filing objections—would have refrained from complaining about the purported absence of the supplement after the deadline for filing it had passed.

In light of that finding, the Court declined to postpone the hearing like Brooks asked and instead offered to let him participate by telephone. Hrg. Tr. at 13:8-14:8. Brooks initially stated that the would "just listen," without asking questions. *Id.* 14:3-15:17. He then objected to Lorenc's questions throughout the hearing and conducted extensive cross-examination. *See generally id.* SAC presented six witnesses. *See generally id.*

At the end of SAC's presentation on April 2, the Court decided to continue the hearing to April 22, 2019 to give Brooks one last chance to present evidence. Brooks

5

claimed that he had video-recorded evidence of witness Jeff Hamm's deposition, and the Court ordered that he disclose it to SAC by April 9 if he planned to use it. R. 44, 4/2/19 Minute Entry. He did not disclose or file anything by April 9. On April 12, Brooks filed a witness list on the docket. R. 45, Pl.'s Witness List. The list included three video depositions, Lorenc, and three unnamed employees of either SAC or Thompson Coburn. *Id.* at 1. SAC filed a motion to quash the witness list, arguing that the video depositions were redundant with the deposition transcripts and had not been furnished to SAC by April 9, that Lorenc's testimony would be duplicative, and that the witness list was untimely. R. 46, Mot. Quash at 3-5. Brooks then filed a competing motion to continue the hearing further, because SAC had not provided its original witness list to him until the day before the April 2 hearing (despite the fact that SAC had filed its supplement with the same witnesses' affidavits *weeks* before) and because SAC had refused to provide him with contact information for the unnamed witnesses on his list. R. 48, Mot. Continue ¶¶ 9-17, 20-22. The Court denied Brooks's motion, R. 48, and granted SAC's, R. 46, because Brooks's videos were not proper under Rules 28 and 30; he did not disclose the video of Hamm's deposition on time; Lorenc's testimony would be unnecessarily cumulative; and Brooks should have subpoenaed his unnamed witnesses and sought their identities sooner. R. 49, 4/19/19 Order.

Brooks did not appear to present in-person testimony on April 22—instead, he again appeared by telephone. R. 50, 4/22/19 Minute Order. So the Court closed the record on the evidentiary hearing. *Id.* The parties submitted post-hearing briefing.

Brooks filed an extension motion to file his response but failed to notice it for a presentment hearing, as required by Local Rule 5.3(b). R. 57, Mot. Extension. The Court could have denied the motion on that basis, but it instead allowed Brooks to file his response late. R. 60, 8/7/19 Minute Order. The Court has considered Brooks's otherwise late-filed response, R. 61.

## B. Findings of Fact

In its post-hearing brief, SAC sets out three categories of alleged misconduct. R. 55, Def.'s Post-Hearing Br. The first is Brooks's behavior *during* his depositions on both February 21 and 22. *Id*. at 2-7. The second is Brooks's conduct *after* the deposition on February 22. *Id*. at 7-9. Finally, SAC addresses Brooks's conduct during his telephonic appearance at the April 2 hearing. *Id*. at 9-11. The Court will address the first two categories but need not address the third.

### 1. Misconduct During the Depositions

### a. Court Reporters

SAC's first category of evidence relates to Brooks's conduct during his depositions on Thursday, February 21 and Friday, February 22. Def.'s Post-Hearing Br. at 2-7. The court reporters for both days testified about Brooks' conduct and demeanor. Annette Brewer served as the court reporter on February 21. Her initial affidavit reported that Brooks made "snide and off-the-cuff remarks deliberately directed toward both witnesses," and that he "exhibited an accusatory tone" and "sense of deliberate hostility." R. 55-2, Exh. B, Brewer Aff. at 1-2. At the hearing, she confirmed that Brooks created an "escalating uncomfortableness" and "environment

of contentiousness." Hrg. Tr. at 18:17-19, 21:3-10. She also credibly testified that she decided not to serve as the court reporter for the scheduled February 22 depositions because of Brooks' conduct on February 21. Hrg. Tr. at 22:12-23:12 ("It was not worth the pay.").

Steven Stefanik was the assigned court reporter on February 22. He also wrote an affidavit averring that Brooks's tone during that morning's deposition was one of "hostility" and that he "call[ed] defense counsel and their witness[] liars." R. 55-3, Exh. C, Stefanik Aff. at 1:24-2:3. At the hearing, he described Brooks's conduct as "short-tempered," with a "lack of patience." Hrg. Tr. at 61:6-10. Brewer's and Stefanik's accounts of the depositions they transcribed are very similar in their descriptions of Brooks's conduct and attitude toward opposing counsel and the witnesses. Their accounts corroborate each other, supporting that Brooks' tone and demeanor were hostile and contemptuous during the depositions at Thompson Coburn's office.

### b. Hamm and Shorette

Two other witnesses testified about the February 21 depositions, and the two allege a more specific threat made by Brooks. First, Jeff Hamm: he is an SAC employee whom Brooks deposed that afternoon. On cross-examination, Brooks elicited testimony from Hamm that the two had known each since 2001 and worked together before. Hrg. Tr. at 124:11-14. Hamm's deposition was contentious, to say the least. *Id*. at 116:14-16 ("He was provocative. He was angry. He was trying to pick a fight with me."); *id*. at 116:19-117:1 (describing an incident in which Brooks turned

his personal video recorder on Lorenc and started questioning her); *see also* R. 55-4, Exh. D, Hamm Aff. ¶¶ 9-11 (describing the beginning of Hamm's deposition, including Brooks' use of his own video camera over Lorenc's objection). Hamm testified credibly that he was fearful during the deposition that Brooks would physically attack Lorenc. Hrg. Tr. at 112:19-113:8 ("I remember on two occasions where I clenched … the armrest of my chair because I thought he was … going to jump across the table."); *id*. at 116:18-25; *see also* Exh. D, Hamm Aff. ¶ 26.

Most importantly, Hamm testified that at the end of the deposition, Brooks threatened him: "[H]e made the statement that, you wait until I get to Atlanta or I can't wait till I get to Atlanta." Hrg. Tr. at 114:22-24. What is important here is that Hamm lives in Atlanta (Brooks lives in Florida). *Id*. at 115:4-5. Hamm testified that Brooks grabbed his jacket, and Hamm then heard Lorenc ask, "[D]id you just threaten my client?" *Id*. at 114:25-115:2. According to Hamm, he considered informing his hometown police of Brooks' threat but ultimately did not do so. *Id*. at 115:11-16. Overall, Hamm testified that he felt unsafe during the deposition, and that he thought Brooks's threat was serious. *Id*. at 115:17-19; *id*. at 116:18-21. His account at the hearing was consistent with his original affidavit. Exh. D, Hamm Aff. ¶ 24.

Jacob Shorette, SAC's in-house corporate counsel, also attended Brooks' deposition of Hamm. Shorette wrote in his affidavit and testified at the hearing that Brooks was "confrontational and aggressive" during the deposition. Hrg. Tr. at 131:19-132:13; *id*. at 142:10-18 (testifying that Brooks at one point said to Lorenc, "[D]on't try to take control of my deposition ... I'll hit back; I'm in control of this.");

9

R. 55-5, Exh. E, Shorette Aff. ¶¶ 5-6. Most importantly, Shorette also heard Brooks say "something along the lines of, I'll see you in Atlanta," and the statement "came off as threatening or menacing." Hrg. Tr. at 133:15-134:2; Exh. E, Shorette Aff. ¶ 5(c). And, like Hamm, Shorette heard Lorenc's contemporaneous shocked reaction. Hrg. Tr. at 133:20-24 ("[Lorenc] asked what that meant."); Exh. E, Shorette Aff. ¶ 5(c) ("SAC's counsel asked if that was a threat."). He also recalls encouraging Hamm to reach out to local law enforcement in Atlanta about the threat. Hrg. Tr. at 134:14-135:8; Exh. E, Shorette Aff. ¶ 7.

Shorette was also present for the deposition on February 22. He, like Stefanik, testified that Brooks' aggressive behavior continued on that date and that Brooks called the witness and counsel liars. Hrg. Tr. at 135:9-17; Exh. E, Shorette Aff. ¶ 5(b).

### 2. After the February 22 Deposition

Next, SAC addresses Brooks's conduct after the deposition on February 22. Def.'s Post-Hearing Br. at 7-9. Three witnesses testified that Brooks was loud and aggressive when his February 22 deposition was wrapping up. First, Todd Rowden, the managing partner of Thompson Coburn's Chicago office, testified that as he was walking down the hallway, he heard someone "raising his voice and yelling" in a conference room. Hrg. Tr. at 45:14-23; R. 55-6, Exh. F, Rowden Aff. ¶ 4. Rowden walked up to the room, saw Brooks, and told him to "keep [his] voice down." Hrg. Tr. at 46:1-3. Rowden testified that Brooks responded "along the lines of, you can't tell me what to do or you can't make me do anything." Hrg. Tr. at 47:16-22; Exh. F, Rowden Aff. ¶ 5. After that encounter, Rowden decided that Brooks was a threat to

10

the deposition participants and that he should not be allowed back into Thompson Coburn's office for his Friday afternoon deposition. Hrg. Tr. at 48:3-7.

Second, Brian Blinstrup, Thompson Coburn's Chicago office administrator, testified that Thompson Coburn's receptionist told him there was a "confrontational" person in the conference center. Hrg. Tr. at 83:5-14. When he walked past the conference room soon after, he saw distressed expressions on the participants' faces and heard Rowden ask Brooks to be quieter, to which Brooks responded with something like, "I'll say what I want and as loud as I want." *Id.* at 85:10-86:3; *id.* at 92:14-23. Like Rowden, Blinstrup felt it would be unsafe to allow Brooks to return to the office for his afternoon deposition. *Id.* at 89:5-13.

Finally, Jacob Shorette also witnessed Brooks interact with Rowden and Blinstrup after the February 22 deposition. According to Shorette, Brooks was asked to be quieter and then said something like, "you don't tell me what to do or no one tells me what to do." Hrg. Tr. at 135:20-136:23.

### 3. Clear Evidence of Brooks' Threat to Hamm

The hearing witnesses painted a clear picture of Brooks' hostile and aggressive behavior during both the February 21 and February 22 depositions. Brewer and Stefanik—while they did not testify specifically to the threat that Hamm and Shorette recounted—credibly testified to Brooks' tone and demeanor in both depositions. The court reporters were particularly credible because they are neutral parties in the underlying dispute. Most importantly, their testimony about Brooks's overall hostility—while it might not be sanctionable in and of itself—bolsters Hamm's

11

and Shorette's allegations that Brooks' made a specific threat against Hamm. In other words, the court reporters' descriptions of Brooks' rude, confrontational, and aggressive manner make it more likely that he did in fact threaten Hamm.

Hamm and Shorette both credibly testified that Brooks made the thinly veiled threat: "I'll see you in Atlanta." To be sure, Hamm's and Shorette's versions do not match verbatim in the exact wording of the threat, but that is not surprising given that the threat came out-of-the-blue. Indeed, it would be *less* credible if Hamm's and Shorette's versions matched word-for-word. And they both remembered Lorenc's contemporaneous reaction and question ("Did you just threaten my client?"), which also helps confirm that Brooks made the threat and that he used a threatening tone. For his part, Brooks has failed to present any record evidence other than assertions in briefs.

What's more, SAC presented credible evidence on Brooks' interaction with Rowden and Blinstrup after the deposition on the morning of February 22. Although yelling at Rowden and other participants may not be sanctionable conduct on its own, like the court reporters' testimony described above, it strengthens the likelihood that Brooks threatened Hamm on February 21.

In light of the record evidence, the Court finds by a preponderance of the evidence that Brooks threatened Hamm at the end of his deposition. Indeed, the evidence would meet a clear-and-convincing standard of proof.

## C. The Appropriate Sanction

Although Brooks "only" made the one threat against Hamm, the seriousness of the misconduct justifies dismissing the case with prejudice for abuse of process. There is no reasonable and workable alternative to dismissal. Brooks has not proposed one. And short of an extreme measure like hiring security for depositions and any in-person encounters between Brooks and SAC (such as status and motion hearings, and ultimately a potential trial), there is nothing else that can alleviate the threat. SAC and Thompson Coburn have a reasonable fear for their employees' safety. Nor was a prior warning needed: threatening someone with physical harm is plainly misconduct, and Brooks' *pro se* status does not change that fact. The right sanction is to dismiss this case with prejudice.

## IV. Conclusion

For the reasons explained above, this case is dismissed with prejudice for abuse of process. The status hearing of September 19, 2019 is vacated.

ENTERED:

_____s/Edmond E. Chang_____
Honorable Edmond E. Chang
United States District Judge

DATE: August 23, 2019

13

A13

ILND 450 (Rev. 10/13) Judgment in a Civil Action

Case: 1:18-cv-03472 Document #: 68 Filed: 08/23/19 Page 1 of 1 PageID #:1292
Case: 19-2953     Document: 26     Filed: 08/05/2020     Pages: 59

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Rufus Lovell Brooks,

Plaintiff(s),

v.

SAC Wireless, LLC,

Defendant(s).

Case No.  18 C 03472
Judge Edmond E. Chang

## <u>JUDGMENT IN A CIVIL CASE</u>

Judgment is hereby entered (check appropriate box):

☐    in favor of plaintiff(s)
and against defendant(s)
in the amount of $    ,

      which ☐ includes    pre–judgment interest.
          ☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

☐    in favor of defendant(s)
and against plaintiff(s)

.

Defendant(s) shall recover costs from plaintiff(s).

☒    other: Case dismissed with prejudice.

This action was *(check one)*:

☐ tried by a jury with Judge    presiding, and the jury has rendered a verdict.
☐ tried by Judge    without a jury and the above decision was reached.
☒ decided by Judge Edmond E. Chang on a motion a motion to dismiss as sanctions.

Date:  8/23/2019          Thomas G. Bruton, Clerk of Court

                                  s\Sandra Brooks, Deputy Clerk

A14